## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

Helen M .Gerostathos
Attorney

*Direct dial 617-348-4794*
hmgerostathos@mintz.com

617 542 6000
617 542 2241 *fax*

July 23, 2003

*03- 11390*
*DPW)*

Civil Clerk's Office
United States District Court
  for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

Re:   Lisa McGonagle and Deborah Kuhn, on behalf of themselves and all others
      similarly situated v. Nestlé Waters North America, Inc.
      <u>Middlesex Superior Court, Civil Action No. 03-2577</u>

Dear Sir or Madam:

Pursuant to Local Rule 81.1(a), I enclose the *original* certified copies of the following documents from the Middlesex Superior Court: (1) Civil Action Cover Sheet; (2) Complaint and Jury Claim; (3) Summons; (4) Notice of Filing of Notice of Removal; and (5) Docket Sheet. These are all of the documents that were filed in the state court action.

Please acknowledge receipt of the enclosed document by date-stamping the enclosed copy of this letter.

Thank you for your assistance in this matter.

Very truly yours,

Helen M .Gerostathos

HMG:hmg

cc:   Max D. Stern, Esq.

*Boston  New York  Reston  Washington  New Haven*

*Commonwealth of Massachusetts*
## SUPERIOR COURT DEPARTMENT
### THE TRIAL COURT
#### CAMBRIDGE

MICV. 2003-1953

I, Theresa M D'Alba Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the Twenty-Third  Day of July in the year of our Lord Two Thousand Three

In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this Twenty-Third  Day of June in the year of our Lord Two Thousand Three.

Deputy Assistant Clerk



| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 03-2577 | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S) Lisa McGonagle & Deborah Kuhn | DEFENDANT(S) Nestle Waters North America, Inc. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Max Stern Stern Shapiro Weissberg & Garin, LLP Board of 90 Canal Street Boston, MA 02114 | ATTORNEY (if known) Jeffrey Garrod & Stanley Schwartz Orloff, Lowenbach, Stifelman & Siegel 101 Eisenhower Parkway Roseland, NJ 07068 |
|---|---|

Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A02 | Contract | ( A ) | ( X ) Yes    (  ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
   Subtotal $ . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . $ . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
F. Other documented items of damages (describe)
   $ . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . . . . . . .
TOTAL $ . . . . . . . . . . .

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY
JUN 18 2003
_____ CLERK

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
This is a class action on behalf of all Massachusetts consumers who purchased bottled water from the defendant which was represented to be "spring water," but which was not in fact derived from spring sources. Total damages for the class are in the millions of dollars, but the precise amount has not been quantified at this time.

TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____Max D. Stern_____   DATE: 6/18/03

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2003-02577
## McGonagle et al v Nestle Waters North America, Inc.

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 06/18/2003 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 07/18/2003 | **Session** | B - Cv B (11B Cambridge) | | |
| **Origin** | 1 | **Case Type** | A02 - Goods sold/delivered under contract | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 09/16/2003 | **Answer** | 11/15/2003 | **Rule12/19/20** | 11/15/2003 |
| **Rule 15** | 11/15/2003 | **Discovery** | 04/13/2004 | **Rule 56** | 05/13/2004 |
| **Final PTC** | 06/12/2004 | **Disposition** | 08/11/2004 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Lisa  McGonagle
Active 06/18/2003

**Private Counsel 471770**
Thomas M Sobol
225 Franklin Street
26th Floor
Boston, MA 02110
Phone: 617-482-3700
Fax: 617-482-3003
Active 06/18/2003 Notify

**Private Counsel 567636**
Edward Notargiacomo
225 Franklin Street
26th Floor
Boston, MA 02110
Phone: 617-482-3700
Fax: 617-482-3003
Active 06/18/2003 Notify

**Plaintiff**
Deborah  Kuhn
Active 06/18/2003

**Private Counsel 471770**
Thomas M Sobol
225 Franklin Street
26th Floor
Boston, MA 02110
Phone: 617-482-3700
Fax: 617-482-3003
Active 06/18/2003 Notify

**Private Counsel 567636**
Edward Notargiacomo
225 Franklin Street
26th Floor
Boston, MA 02110
Phone: 617-482-3700
Fax: 617-482-3003
Active 06/18/2003 Notify

MAS-20020121
demeo

**Commonwealth of Massachusetts**
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

07/21/2003
08:52 AM

## MICV2003-02577
## McGonagle et al v Nestle Waters North America, Inc.

| **Defendant** | **Private Counsel 630685** |
|---|---|
| Nestle Waters North America, Inc. | Benjamin L Hincks |
| Served: 07/01/2003 | Mintz Levin Cohn Ferris Glovsky & Popeo |
| Served (answr pending) 07/01/2003 | PC |
| | 1 Financial Center |
| | Boston, MA 02111 |
| | Phone: 617-542-6000 |
| | Fax: 617-542-2241 |
| | Active 07/21/2003 Notify |

**Private Counsel 556780**
Kevin M McGinty
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
39th floor
Boston, MA 02111
Phone: 617-542-6000
Fax: 617-542-2241
Active 07/21/2003 Notify

**Private Counsel 277900**
Martha J Koster
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
Boston, MA 02111
Phone: 617-542-6000
Fax: 617-542-2241
Active 07/21/2003 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 06/18/2003 | 1.0 | Complaint & civil action cover sheet filed |
| 06/18/2003 | | Origin 1, Type A02, Track F. |
| 07/01/2003 | 2.0 | SERVICE RETURNED:  Nestle Waters North America, Inc.(Defendant) |
| | | 07/01/03 accept service by counsel. |
| 07/18/2003 | 3.0 | Case REMOVED this date to US District Court of Massachusetts by Deft |
| | | Nestle Waters North america, Inc. |
| 07/21/2003 | | ABOVE ACTION THIS DAY REMOVED TO U.S. DISTRICT CRT OF MASSACHUSETTS |

### EVENTS

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT
DEPARTMENT OF THE TRIAL
COURT**

| |
|---|
| LISA McGONAGLE and DEBORAH KUHN, on behalf of themselves and all others similarly situated, |
| Plaintiffs, |
| v. |
| NESTLÉ WATERS NORTH AMERICA, INC., |
| Defendant. |

**03-2577**

Civil Action No.



### CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Lisa McGonagle and Deborah Kuhn ("Plaintiffs"), by and through their counsel, on behalf of themselves and all other persons and entities similarly situated, allege the following facts and claims upon knowledge as to matters relating to themselves, and upon information and belief as to all other matters based upon the investigations of counsel, allege as follows:

```
06/18/03 14:22#0000 6654 CLERK E
CIVIL          200.00
SURCHARGE       10.00
032577 #
SUBTTL         210.00
TOTAL  210.00
CHECK          210.00
```

### INTRODUCTION

1.     Plaintiffs bring this proposed class action on behalf of all Massachusetts consumers of "Poland Spring Natural Spring Water" ("Poland Spring") who have purchased bottled water under the Poland Springs label (the "Class") for monetary, declaratory and injunctive relief based on Nestlé Waters North America, Inc.'s ("Nestlé" or "Defendant") fraud, breach of contract and breach of implied covenant of good faith and fair dealing in connection with its bottling, labeling, advertising, promotion and sale of its Poland Spring products.

2.     Poland Spring is the largest selling brand of United States bottled water under the Nestlé Waters of North America ("Nestlé") umbrella. Poland Spring is also the leading selling spring water in the nation and the third leader in bottled water sales overall. Although in 2001,

- 1 -

after holding the title for four straight years, Poland Spring was surpassed as the number one bottled water brand in the nation, its wholesale sales still managed to increase in that year to $542 million, taking the product to a 20.2% growth. Nestlé attributes such phenomenal success largely to its advertising and marketing campaign to consumers.

3.      Within the bottled water market there are two distinct segmented industries: "PET" and "Home & Office."

       a.   PET refers to polyethylene terephthalate, the durable and lightweight plastic used to make the small bottles ranging from six ounce to two liters that are sold primarily to retail customers.

       b.   the Home & Office market refers to the five-gallon or returnable container business that is often associated with the office water cooler.

4.      Nestlé's market share in the United States is projected at thirty-three percent for PET and forty percent for Home & Office, with a projected total of 35% of the total United States bottled water market. Nestlé's bottled water market share is triple that of its nearest competitor.

5.      In the bottled water business the term "natural" or "spring water" signifies to consumers that the water is of the highest quality. As such it commands a premium in terms of price when compared to plain bottled or filtered water

6.      Throughout the class period Nestlé has advertised its water to capture the public's appetite for, and willingness to pay more, for "spring water." Nestlé represented to consumers that "our water comes from some of the most pristine and protected sources deep in the woods of Maine." It also represented that its water was "natural spring water" whose fresh taste "can be credited to only one true source – Earth's natural processes."

7.      Each of the labels applied to Defendant's products proudly and prominently promises that the product is "natural spring water" and that the source of "Poland Spring Natural Spring Water" is located deep in the Maine woods, is carefully protected by nature, and for over 150 years has been enjoyed for its purity and taste. Among its many unconscionable commercial practices, deception, and knowing concealment, Poland Springs: (i) falsely labels, promotes and

- 2 -

advertises its bottled water as "spring water"; (ii) misleads the public as to the geologic and geographic sources of its "spring" water; and (iii) falsely labels, promotes and advertises its bottled water as "natural" spring water, all for the purpose of deceiving the public into believing they are buying premium water.

8. In fact, Poland Spring water is not "spring water," is not from "pristine and protected sources" and is not "naturally purified." Its own tests indicate that much of its water come from sources that are contaminated with toxic chemicals or are under direct threat of contamination. No reasonable consumer would consider this water to meet the Nestlé's advertising claims for "Poland Spring Natural Spring Water."

9. "Poland Spring Natural Spring Water" derives its supply from four separate sources and is bottled at four separate facilities (the Poland Spring Facility, Garden Spring Facility, Clear Spring Facility and Fryeburg Spring Facility). The water that comes from Garden Spring, located in Poland, Maine, is approximately seven miles from the original Poland Spring and is transported by tanker truck to Framingham, Massachusetts for processing, bottling and distribution as Home & Office bottled water. Clear Spring, located in Hollis, Maine, and thirty-five miles from the original Poland Spring, has its own bottling plant, and the source water is bottled on site. The Fryeburg spring source is located over thirty miles from the original Poland Spring Source. The Poland Spring water source is located and bottled on the same property as the original Poland Spring, but the original Poland Spring has been defunct since 1967.

10. In this action, Plaintiffs seek injunctive relief and damages on behalf of themselves and all other similarly Massachusetts situated consumers of "Poland Spring Natural Spring Water" to redress defendant's unlawful behavior.

## PARTIES

11. Plaintiff Lisa McGonagle is an individual residing in Middlesex County in the Commonwealth of Massachusetts and a long time consumer of "Poland Spring Natural Spring Water."

- 3 -

12.     Plaintiff Deborah Kuhn is an individual residing in Middlesex County in the Commonwealth of Massachusetts and a long time consumer of "Poland Spring Natural Spring Water."

13.     Defendant Nestlé Waters North America, Inc. is a corporation with its headquarters in Greenwich, Connecticut ("Nestlé" or "Defendant"). (Defendant will sometimes hereafter be referred to as "Nestlé," "Defendant" or "Poland Spring.") Nestlé bottles, distributes and sells throughout Massachusetts bottled water products under the label "Poland Spring."

## JURISDICTION AND VENUE

14.     Plaintiffs bring this class action under Massachusetts law for fraud, breach of contract and breach of implied covenant of good faith and fair dealing, for monetary, declaratory and injunctive relief as well as reasonable attorneys' fees and costs with respect to injuries sustained by Plaintiffs and members of the Class arising from violations by Defendant.

15.     This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to M.G.L. c. 212, §4. This Court has personal jurisdiction over the parties because Plaintiffs and the members of the Class reside in Massachusetts and because Defendant systematically and continually conducts business in, or otherwise intentionally avails itself of, the Massachusetts marketplace through the production, promotion, sale, marketing and distribution of its products and services in Massachusetts. Although the total damages to the Plaintiff class are in the many millions of dollars, the damages suffered by each individual Plaintiff and class member in no case exceeds $75,000.

16.     Venue is proper in this Court because Plaintiffs reside in and Defendant conducts business in Middlesex County in the Commonwealth of Massachusetts, including marketing, advertising and sales directed at Massachusetts residents.

## STATEMENT OF FACTS

**B.      Poland Spring Falsely Markets Its Water Based on Quality**

17.     Poland Spring has marketed its product to attract consumers who are interested in high quality water. Virtually every advertisement about its product emphasizes the source and

- 4 -

quality of Poland Spring's water.  This campaign starts with the label on each bottle proudly

proclaiming that the source of the water is "Poland Spring," and further proclaiming that its

water is "found deep in the woods of Maine," and that "Poland Spring Natural Spring Water" is

exceptionally well protected by nature."  A typical label states:

POLAND SPRING®
What it means to be from Maine.®

> Found deep in the woods of Maine, Poland Spring natural spring
> water is exceptionally well protected by nature.  For over 150
> years, people have appreciated its distinctive, clean, crisp taste.
> We hope you do, too.

18.    As explained below, Poland Spring water is not "spring water" and the sources

are not "well protected."

19.    In other advertising the same theme is repeated:

> AT POLAND SPRING®, WE TAKE CARE OF OUR
> NATURAL RESOURCES-AND OUR CUSTOMERS.  WE
> EARN THE TRUST YOU PLACE IN US EVERY TIME YOU
> TWIST OFF A CAP AND DRINK OUR CLEAN, CRISP
> SPRING WATER.  HERE'S A QUICK LOOK AT WHAT
> WE'RE MADE OF...LITERALLY.

20.    As explained below, Poland Spring cannot be "trusted" and a reasonable

consumer would not deem true the statement "we take care of our natural resources."

21.    Poland Spring also represents that it has high quality control procedures:

**Purity and Perfection**

> Purity.  It's a word that sums up our water – fresh, clean-
> tasting, natural, and utterly safe.

> At Poland Spring, we take our job – safeguarding this gift of
> nature – very seriously.  Bottled water has become the choice
> for all-natural refreshment with so many people turned on to
> healthy living and others turned off by the taste of tap water or
> the threat of lead, cryptosporidium, or chlorine by-products in
> some water systems.  And we, at both Poland Spring and our
> parent company, The Perrier Group of America, know the
> means to – and the meaning of – purity better than anyone.

**Over-protective and Proud of It**

- 5 -

We are ultra-controlling, in the best sense, about how we gather, bottle, and transport spring water. We vigilantly protect Poland Spring's pristine sources in Poland, Maine. We also invest in state-of-the-art monitoring equipment and high-tech bottling systems to safeguard our water with a "multiple barrier" approach from source to table. A case in point: our superior microfiltration system is an absolute barrier against cryptosporidium or other impurities.

How can we afford to be so meticulous? For one thing, we can't afford not to be because of the trust consumers place in us. For another thing, we manage a relatively small volume of water, meant only for consumption, not for household purposes like doing the laundry or watering the lawn. Plus, our strength as the industry leader gives us the backing to be dedicated to the best. (Emphasis added.)

22.    As explained herein, Poland Spring's "spring water" is not "natural," is not "utterly safe," is not "spring water" and is not "pristine."

23.    In another advertisement issued during the Class Period Nestlé promises it delivers "pristine spring water":

## Poland Spring Water Company

"What it means to be from Maine."(tm)

The Poland Education Foundation thanks Poland Spring Bottling Company for making the Poland Spring web site and other education-related projects possible for the students and citizens of the Poland community.

Welcome to the great taste of Poland Spring, the northeast's favorite bottled natural spring water. It comes to you straight from Poland Spring, Maine, where we capture one of earth's most precious resources – fresh, remarkable pleasing spring water – and package it for our customers.

Our bottling process is designed with one purpose in mind: to ensure Poland Spring Water always remains pristine. (Emphasis added.)

24.    As explained below, Defendant's water is not "natural spring water" and is not "pristine."

25.     By falsely labeling its product as "spring water," Nestlé is able to charge a premium over other bottled waters.  During the class period, Nestlé has charged a substantial price differential between its labeled spring water products and its own alternative water products.  For instance, Nestlé has charged a calculated difference of over 10% between its "Poland Spring Natural Spring Water" products and two of its purified brands (Ice Mountain and Deer Park).  Further, today's prices as reported in several stores in the Boston area reveal this difference:

(Smaller convenience store/market in financial district)

| Poland Spring Natural Water | $1.75 |
| Dasani Purified Water | $1.45 |
| Aquafina Pure Water | $1.45 |

(Drug store)

| Poland Spring Natural Water | $1.19 |
| Dasani Purified Water | $1.09 |
| Aquafina Pure Water | $1.09 |
| Fiji Artisanal Water | $0.90 |

(Large Supermarket)

| Poland Spring Natural Water | $1.09 |
| Dasani Purified Water | $0.90 |
| Aquafina Pure Water | $0.90 |
| Fiji Artisanal Water | $0.85 |

26.     Because of these price differences, one can see that Poland Spring reaps tens of millions in profits due to falsely labeling its product as "spring" water.

27.     As detailed below, those representations, and the foundation of the label itself, are false.  The water is not "spring water"; its sources are often not "well protected" and "deep in the woods of Maine," but are from sources at or near contaminated sites and are not spring water as that term is defined by applicable regulations.

## C.      Historical Background

28.     The original use for the Poland Spring, located in Poland, Maine, was as a mineral water therapy and health source by Hiram Ricker and his family in the 1860's.  The Ricker family built the Poland Spring House Resort near the spring in the hills of Poland, Maine.  In the 1880's, the Ricker family constructed a bottled water plant at the spring's source and shipped

bottled water via rail spur to New England cities. From the 1890's through the 1960's, the Poland Spring House and Poland Spring bottled spring water business thrived. In 1967, the spring ceased to produce enough spring water volume to be marketable and both the bottling plant and spring were closed.

29.     The Ricker family subsequently sold portions of their property to the State of Maine and a company called the "Waters of Maine." The State of Maine's property was located east of the dumpsite for the Poland Spring House Resort. This property was subsequently renamed the Lower Range Pond State Park. The 400-acre portion of property transferred to the Waters of Maine was situated between the State Park and the Resort.

30.     In the 1970's the Waters of Maine installed wells adjacent to the dump and began drawing water from the Lower Range Pond aquifer as "spring water," and constructed a bottling plant on its 400-acre parcel adjacent to Lower Range Pond.

31.     In 1979, the Perrier Company of France ("Perrier") purchased the assets of Waters of Maine and expanded the bottling plant by bulldozing sand and gravel over the dump, thereby pushing the contents of the dump into a contiguous pond.

32.     In 1993, Nestlé S.A. ("Nestlé") purchased Perrier following a worldwide recall of all Perrier water products caused by discovery of benzene contamination of bottle water products by the State of North Carolina.

33.     In 1994, Nestlé expanded the Poland Spring bottling plant by installing several additional production wells near the new plant in order to increase production of "Poland Spring Natural Spring Water" volume from 195 million gallons to 300 million gallons per year.

34.     Nestlé also purchased Garden Spring Water Company and its source located seven miles from the Poland Spring bottling plant in the Tripp Lake Watershed to serve as a new source for all Poland Spring Home & Office bottled water, processed at the Framingham, Massachusetts plant. After Nestlé submitted an application to the Massachusetts Department of Public Health for proposed Home & Office bottled spring water, Dr. Liz Bourque, a Massachusetts Bottle Water Regulator, noted that the label omitted the required statement of the

- 8 -

spring water source. Nestlé never submitted the required statement of its spring water source for its "Poland Spring Natural Spring Water."

35.    In 1995, Nestlé constructed a larger well at Garden Spring to permit the production of 200,000 gallons per day for a maximum of 75 million gallons per year to supply the Framingham bottling plant.

36.    In 1996, Nestlé submitted a hydrogeological study of the Garden Spring source aquifer to obtain the state of Maine's approval of the source as a "spring." The Maine drinking water program later approved Garden Spring as a "spring" water source. Subsequently, Nestlé advertised to the public that the source of "Poland Spring Natural Spring Water" is a spring that originates as water "percolating up through cracks and fissures in the bedrock underlying the Poland Spring 400-acre parcel."

37.    In 1997, Nestlé submitted an application to Maine regulators for permits to replace several production boreholes at the Poland Spring plant because they were inadequate. Nestlé included affirmative statements in the applications that these sources have continually met or exceeded safe drinking water and state bottled water quality standards.

38.    In 1998, Nestlé began a treatment program of all water bottled at the Poland Spring plant, which included ozonation, absolute .1-micron filtration, carbon tower filtration and UV light treatment. Nestlé, however, has never labeled its Poland Spring bottled water as ozonated or micro-filtered for purity. Nestlé also entered into a water rights extraction contract with the state of Maine for more than one million dollars to allow Nestlé to withdraw water from the Lower Range Pond Aquifer as an additional Poland Spring water source.

39.    Further, in 1998, Nestlé submitted to Maine state regulators a hydrogeological report stating that through its drilled wells (or boreholes) it was able to tap into up-flow from Poland Spring's natural spring orifices, which Nestlé alleges are sub-aqueous springs discharging at the bottom of Lower Range Pond. Nestlé was unable to support its position with photographs or otherwise demonstrate water-discharge or groundwater emerging at the earth's surface. Nestlé, however, did provide aerial infrared thermal photographs, which allegedly demonstrated

- 9 -

diffuse areas of water temperature contrast in several locations at the Pond's bottom. Without showing that this differential in water temperature was in fact proof that the up-flow taps the same formation that feeds the original spring source, the State of Maine approved Nestlé's claim that this was a natural spring water source.

40.     Upon the state of Maine's approval, Nestlé began advertising that the source of Poland Spring water comes from numerous springs consisting of rainwater that enters the ground and percolates slowly to the sub-aqueous spring orifices through layered sand and gravel deposited 10,000 years ago by glaciers. At no time has Nestlé distinguished between the Garden Spring and Poland Spring sources.

41.     Through 1998 and 1999, Nestlé submitted to the Massachusetts Department of Public Health Nestlé-prepared Poland Spring bottled water quality analyses from Poland Spring, attesting to the total purity of product water distributed to Massachusetts consumers. These submissions are published in the Massachusetts Department of Public Health Annual Survey of Bottled Water Quality.

42.     In 1999, the Lord Group, a New York ad agency, published an on-line case study of their successful Poland Spring ad campaign. The Lord Group stated that the goal of the campaign was to induce consumers to "pay a few pennies more for Poland Spring" than for other commodity spring water brands by creating a sense of consumer "trust" in the Poland Spring brand. The Lord Group based this campaign on Nestlé's assurances that the source is absolutely pristine, pure and safe, and that the premium nature of these environmental features adds unique value to Poland Spring.

43.     In the fall of 1999, Nestlé submitted an application to build two source water supply wells on Maine parkland within 80 feet of the Poland Spring Bottling Company disposal site and within 500 feet of the Poland Spring House refuse dump. At that time, Nestlé began using the State of Maine's ground water as "Poland Spring Natural Spring Water," doubled the size of its bottling plant to permit production of over 6 million gallons of source Poland Spring bottled "natural spring water" per year, and began making annual one million dollar payments to

the State of Maine as compensation for the water withdrawn at the new borehole sites at Lower Range State Park.

44.     In the spring of 2000, Nestlé submitted to Maine applications to use the natural springs emerging from the mapped unconfined shallow sand and gravel aquifer located on property in Hollis, Maine.

45.     In the spring of 2001, Nestlé began bottling "Poland Spring Natural Spring Water" at the new Hollis, Maine bottling plant. At that time, Nestlé's product labels stated, "for more than 150 years, consumers have enjoyed this bottled water, whose source is deep in the Maine woods, protected and pure." Nestlé also advertised to the public that the spring water utilized for "Poland Spring Natural Spring Water" "originates as rainwater falling on the hillside above the Poland Spring source that is then filtered naturally as it percolates up through the cracks in the earth on its journey to the spring orifice."

46.     In 2002, Nestlé modified its Poland Spring advertising to state that "there are several sources of Poland Spring brand bottled water," but made no further changes to other statements on Poland Spring labels.

47.     At Garden Spring in 2002, Nestlé installed another source water well to augment the volume of water supplied for the Poland Spring Home & Office business without submitting the necessary preliminary application, results of hydrogeological testing that supports the use of the second well, or other notice required by the Maine bottled water rules. There have also been no public hearings or review regarding this second well.

48.     In October 2002, Nestlé brought the second Garden Spring well on line to supply more than 150 million gallons each year of Poland Spring water to the Home & Office business.

**D.     Nestlé's Four Current "Spring Water" Sources**

49.     The original "Poland Spring," which is explicitly referred to and described on the "Poland Spring Natural Spring Water" label, no longer exists. The source water for the product comes from several sources, none of which draw from the original "Poland Spring." Nestlé has

- 11 -

restored the original springhouse, which is open to the public. An exhibit inside the springhouse clearly shows that the bedrock fed spring is stagnant and no longer flows.

50.     Of the four known current sources for Poland Spring, three of them are located miles away from the original "Poland Spring": (1) "Garden Spring" is 8 miles away and (2) Hollis and (3) Fryeburg are more than 30 miles away from the original "Poland Spring." The bottling plant for the new "Poland Spring" is located more than a thousand feet below the original "Poland Spring." The plant does not tap any free flowing springs, as there are none in the area. The plant uses groundwater extracted from several production wells in close proximity to the plant and the nearby Range Ponds (Lower and Upper) as its source water.

51.     None of the four sources that Nestlé use for its "Poland Spring Natural Spring Water" products qualifies as "spring water."

**E.     Poland Spring**

52.     This was the original source of "Poland Spring Natural Spring Water" and historically provided the main source water for the Poland Spring consumer/retail market until recently. The original Poland Spring was a bedrock spring located near the top of Ricker Hill in the town of Poland, Maine. Bottling operations began in 1854 when Hiram Ricker began bottling the spring water for distribution to the general public. The spring was located within a springhouse on the eastern flank of Ricker Hill near the crest of the hill. In 1967, groundwater ceased to flow from the bedrock spring and its use was discontinued.

53.     The bedrock spring water source was replaced with a number of gravel-packed wells (or boreholes) that were installed over a period of time adjacent to Lower Range Pond, which is located at the base of Ricker Hill. The production wells were drilled into a stratified drift aquifer that flanks the east and northeast sides of Ricker Hill. Over the years ten gravel packed wells have been installed. Stratified-drift aquifers consist mainly of layers of sand and gravel, parts of which are saturated and can yield water to wells or springs. These aquifers are high yield aquifers that can recharge quickly with rainwater, but are also vulnerable to easy contamination. Eight of the wells are located on property owned by Nestlé. Most recently

- 12 -

Nestlé in Range Pond State Park has installed two gravel packed wells.  Currently, Nestlé has a permit from the State of Maine to pump six hundred million gallons per year from the stratified drift aquifer.  The water is treated (particulate filtration, ozonation, UV Oxidation, carbon filtration), bottled and sold as spring water under the Poland Spring label.

54.     The Poland Spring plant and its local source wells have historically had contamination and quality issues which have never been revealed to Maine, Massachusetts, or other states' regulators.

55.     In the mid to late 1990's, when Nestlé dramatically increased production at the Poland Spring plant, there was a rash of consumer complaints, which Massachusetts and Rhode Island regulators concluded was due to bacterial contamination of the product.  However, despite the regulators' persistent inquiries and requests for assistance from Nestlé, the source of this contamination was never officially determined.

56.     Internally, Nestlé had reason to believe that the source of the consumer complaints was the Poland Spring plant's local source water and plant operations.  Internal company testing during this period confirmed that the local source water for the plant had serious bacterial contamination issues, including coliform, pseudomonas, and other bacteria.  These contamination issues led to the closing of some of the plant's production wells, the installing of new ones, and the use of various treatment and disinfectant methods, including chlorination.

57.     Hydrogeologists retained by the company to investigate this issue and information presented to the company by outside parties, demonstrated clearly that there were at least two serious potential sources that may have been responsible for the contamination.  This information revealed that the plant was built over a former trash and refuse dump and was down gradient of an illegal disposal site of long standing duration where human sewage was sprayed over a large land surface.  In addition, the companies' own hydrogeologic tests demonstrated that several of the production wells near the ponds were in fact drawing in surface pond water, which made the wells vulnerable to airborne contaminants.

- 13 -

58.     None of this information that had come to the company's attention concerning the contamination and source pollution issues has ever been reported as required to Maine, Massachusetts, and other state's regulators.

59.     The current source water for the Poland Spring plant does not qualify as spring water.  At best, the source qualifies as "groundwater" or "well water," and at worst, because of the infiltration of pond water, the source should be classified as "surface water."

**F.     Garden Spring**

60.     The Garden Spring plant is located in Poland, Maine and is eight miles from the original Poland Spring.  Nestlé purchased the Garden Spring facility soon after it bought the Poland Spring brand and expanded its Poland Spring facility.  The Garden Spring facility has no signs or any other markings indicating its use or company affiliation.

61.     The facility has, until very recently, been the sole source of water for the Poland Spring Home & Office market.  Demand from this market has now been supplemented by the Fryeburg source.  Water pumped from the Garden Spring facility is loaded into tanker trucks for delivery to the Poland Spring bottling plant in Framingham, Massachusetts, where it is then bottled and delivered to the Home & Office market throughout the Northeast.

62.     The Garden Spring source is made up of groundwater derived from gravel packed wells that have been installed in either ice contact or stratified drift deposits.  The facility, which borders Tripp Pond, is located in a former gravel pit near the municipal water supply well for the town.  There are no free flowing springs in the area.  There are, however, three groundwater filled holes that the previous owner unsuccessfully attempted to have certified as springs by Maine public health officials.  The three depressions on the Garden Spring property, which Nestlé refers to as "springs," are actually excavated holes that seasonally intercept the water table.

63.     The Garden Spring well is located down flow from the Poland Spring wells and thus does not qualify as a permissible borehole of the "actual" Poland Spring as it does not tap into the underground formation feeding the Spring.  Further, withdrawal of water from the source

- 14 -

aquifer, the Tripp Pond Aquifer, does not appear to cause any measurable diminution in the "Poland Spring" spring flow volume, another requirement in qualifying as a genuine and permissible spring water borehole.

64.     The Garden Spring does not satisfy the definition of a "spring," as the process of pumping from the Garden Spring aquifer underlying the gravel pit in which the well is drilled merely taps the aquifer. The well is not located "deep in the Maine woods," but rather is in a parking lot, along the side of the road used by hundreds of trucks and cars daily. Further, the original Garden Spring application, filed by a previous owner, was approved in 1993, not "150 years" ago as Nestle advertises. This Garden Spring well was purchased by Nestle in 1995, which then relocated the existing well a few hundred feet to its present location and renamed it Poland Spring II. Not until June of 2002 did Nestle submit a label containing a statement of the water's source and that, exhibited in very fine print, simply states, "source: Poland Spring, Poland, Maine." The statement makes no mention of the Roman numeral II or any other differentiating statement.

65.     Since there are no identifiable springs, there is no way that a hydraulic connection and/or any similar quality between the extracted water and the spring source can be established. The production wells adjacent to the parking lot of the plant are drawing groundwater from a sand and gravel aquifer and, according to Nestlé's own consultants are most likely drawing in pond water from nearby Tripp Pond.

66.     Nestlé's internal company tests have indicated that the production well on this property was drawing in bacteria contaminated water, including high levels of *pseudomonas*. These internal company tests, together with the close proximity of the boreholes to Tripp Pond and the probable infiltration of pond water, raise the risk that the source is directly vulnerable to further contamination.

67.     Water from the Garden Spring source is pumped from a depth of about 83 feet from a production well constructed in a stratified drift aquifer. The water is ozonated prior to its loading into storage tanks, after which it is transferred to six-thousand gallon capacity tanker

- 15 -

trucks and transported to the Nestlé Company "Home & Office" Division in Framingham, Massachusetts, where it is treated (particulate filtration, further ozonation, UV Oxidation, carbon filtration), bottled into large Home & Office carboys and bottles and sold as spring water under the Poland Spring label.

68.     The production capacity of the Garden Spring source is 280,000 gallons per day.

## G.     Clear Spring

69.     In mid 2000, Nestlé developed the Clear Spring source, which is located in the North Hollis Delta west of Wales Pond, in the town of Hollis, Maine. The newly opened Hollis facility is located more than 30 miles from Poland Spring in Hollis, Maine. This facility provides water for the consumer/retail market.

70.     Historically at Clear Spring there have been naturally flowing springs, the "Shy Beaver Brook Springs," which have served in part as the water supply for the fish hatchery at nearby Wales Pond. However, the facility's newly installed production wells have run these springs dry. To make up for the loss of the spring source, the plant recently began piping groundwater captured up-gradient of the springs to a brook feeding the fishpond, which is, in turn, down-gradient of the depleted springs. The Clear Spring source is also made up of groundwater derived from gravel packed wells that have been installed in either ice contact or stratified drift deposits. Water from the Clear Spring source is pumped from a series of wells constructed in an unconfined aquifer to a newly constructed treatment/bottling plant located approximately one mile north of the production wells, where it is packaged for distribution under the Poland Spring label and is designated as "Poland Spring Natural Spring Water".

71.     These "springs" feeding Clear Spring are at best a seasonal source, thus further limiting the opportunity to classify extracted borehole water as "spring water." The seasonal flow of these "springs" is of particular importance because Nestlé's own tests demonstrate that the production wells draw far more water than that which naturally flows to the surface through the springs. The depletion of these "springs" and their limited flow, compared to the volume of

- 16 -

water extracted from the production wells, means that the water from this source does not fit the criteria for "spring water."

72.     Further, this source water is located in a shallow aquifer overlain by land with a long history of fertilizer and pesticide use from past agricultural practices. Indicative of this past industrial use, Nestlé's own wells in this aquifer were not certified for use because of their high levels of nitrates. In addition, the facility and aquifer are located in an area where many private residential wells have been ordered closed by the Maine Department of Health due to their toxic levels of arsenic. Also, Nestlé's tests show that some of the production wells may be drawing in water from nearby Wales Pond. There is no indication that Nestlé has informed State officials of the potential impact of these known historic contamination sources and their potential impact on its source water.

**H.     Fryeburg Facility**

73.     Recently, Nestlé entered into a contract with Pure Mountain Spring, which in turn has a contract to use part of the Fryeburg, Maine municipal water supply as its source water. Ground water from this source is being used at both Poland Spring's Framingham bottling plant for the Home & Office market and its Poland Spring, Maine plant for the consumer/retail market.

74.     The Fryeburg municipal water supply comes from two production wells that draw water from a sand and gravel aquifer 62 to 84 feet below the ground surface. The production wells are located in a former gravel pit, i.e. an excavated area several hundred feet down gradient from Wards Pond, a man-made impoundment, created in the early part of the last century.

75.     Fifty feet from Fryeburg production well no. 1, is a pool of water several feet deep, at the bottom of which can be seen free flowing water coming up from the bottom of the pool. While this pool may look like a spring, it is, in fact, a man-made formation. The pool is located in an excavated area and has been dug below the water table. Because of the pool's location, the water flow cannot be considered "naturally occurring" or "naturally flowing to the surface of the earth." In addition, the impoundment of the water in Wales Pond (effectively creating a dam) causes additional hydraulic pressure, which unnaturally forces groundwater to

- 17 -

flow up through the bottom of the pool.  Historically, no free flowing springs have been

identified in the area, although Nestlé's consultants refer to the nearby brook as "spring fed."

76.     Production well no. 1 is the source of Fryeburg municipal water.  Production well

no. 2, the production well that provides water for Pure Mountain Spring, and therefore "Poland

Spring," is located a few hundred feet down gradient of this pool.  Tests have not demonstrated a

direct connection between the flow that occurs in the pool and the pumping of the groundwater

wells at either production well no. 1 or production well no. 2.

77.     Wards Pond is a man-made feature.  The pond is subject to obvious sources of

pollution.  Next to the pond is an extensive sand and salt storage area.  The pond water has a

distinct color and foul smell suggestive of pollution.  Tests for Pure Mountain Spring have

demonstrated that the production wells may be drawing in surface infiltration from Wards Pond.

Recent press reports have indicated that Nestlé is not satisfied with the volume from this well.

The press accounts relate that Nestlé is considering building a third bottling plant two miles from

this area using a production well in an industrial park as its source water.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action on behalf of themselves and all members of the class,

defined as follows:

> All persons and entities residing in Massachusetts who have purchased
> "Poland Spring Natural Spring Water" bottled water products within
> the four years preceding the filing of this complaint.  Excluded from
> the class is defendant, its subsidiaries and affiliates, and any officers
> and directors thereof, as well as any judge presiding over this action,
> the judge's spouse and immediate family.

79.     Plaintiffs seek damages, including multiple damages, and equitable relief on

behalf of all class members.  Plaintiffs expressly disclaim any intent to request in this suit any

recovery for personal injuries suffered or which may be suffered by any class member.

80.     <u>Numerosity of the Class:</u> The proposed class is so numerous that the individual

joinder of all its members is impractical.  While the exact number and identities of class

members are unknown at this time, and can only be ascertained through appropriate discovery,

Plaintiffs are informed and believe that over one-half of all Americans drink bottled water, over one-third drink bottled water more than once a week, and that Nestlé has a significant market share of the bottled water market.

81.    Existence and Predominance of Common Questions of Law and Fact:  Questions of law and fact of common and general interest exist as to all members of the class and predominate over any questions affecting only individual members of the class.

82.    Questions of fact common to the class predominate, including the following:

a.    Whether Nestlé's "Poland Spring Natural Spring Water" meets the definition of "spring water" under the Code of Massachusetts Department of Public Health, 105 CMR 570.003;

b.    Whether Nestlé knew or should have known that the water bottled in its "Poland Spring Natural Spring Water" does not constitute "spring water";

c.    Whether Nestlé obtains its "Poland Spring Natural Spring Water" from a "mountain" source, or from other sources.

d.    Whether Nestlé knew or through the exercise of reasonable care should have known that its statements made concerning its bottled water products were false or misleading, or had the tendency or capacity to deceive the public.

83.    Questions of law common to the class predominate, including the following:

a.    Whether Nestlé engaged in false or deceptive advertising in the labeling, advertising, and promotion of "Poland Spring Natural Spring Water" because the product does not constitute "spring water"; and

b.    Whether Nestlé engaged in false or deceptive advertising or unfair competition in the labeling, advertising, and promotion of "Poland Spring Natural Spring Water" because the product is not from the geologic or geographic sources which Nestlé represents.

84.    Typicality of Claims:  Plaintiffs' claims are typical of the claims of the members of the class, as all such claims arise out of the purchase of Nestlé's "Poland Springs Natural Spring Water" bottled "spring water" products.

85.    <u>Adequate Representation:</u>  Plaintiffs will fairly and adequately protect the interests of the members of the class and have no interests antagonistic to those of the class members.  Plaintiffs have retained counsel experienced in the prosecution of class actions, including consumer class actions.

86.    <u>Superiority:</u>  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the class is impractical.  The expense and burden of individual litigation renders litigation brought by individual purchasers of Nestlé's "Poland Springs Natural Spring Water" bottled "spring water" products impracticable, difficult or impossible.   Individual litigation would impose a substantial burden upon the court system and raises the risk of inconsistent or contradictory adjudications.  In contrast, proceeding as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and is the only means adequately to protect the rights of all class members.

**COUNT I**

**VIOLATION OF MASSACHUSETTS COMMON LAW OF FRAUD**

87.    The Plaintiffs, individually and on behalf of all others similarly situated, refer to and incorporate herein by reference each of the preceding paragraphs as though fully set forth herein.

88.    Defendant has engaged and is engaging in a pattern of fraudulent and deceptive acts or practices, including, without limitation, the following acts done in connection with the sale of their products:

a.    Falsely or deceptively representing "Poland Spring Natural Spring Water" as "spring water," when its products fail to meet, or fail to consistently meet, the definition of "spring water" under the Code of Massachusetts Department of Public Health, 105 CMR 570.003;

b.     Falsely or deceptively representing "Poland Spring Natural Spring Water" to be of a certain geographical source or from a "spring" source, when it is from multiple sources including other geologic or geographic origins;

c.     Falsely or deceptively representing the purity and "natural" nature of "Poland Spring Natural Spring Water" on their labels and through advertisements.

89.     Defendant Nestle knew or through the exercise of reasonable care should have known that their statements made concerning their bottled water products were false or misleading, or had the tendency or capacity to deceive the public.

90.     By virtue of the foregoing conduct, Defendant has misrepresented the source, characteristics, ingredients, benefits, standard, quality, or grade of their products, and has used deceptive representations or designations of geographic origin of their products.

91.     Defendant's fraudulent and deceptive acts and practices present an ongoing threat and likelihood of deception to members of the public and constitute a fraud upon the members of the public.

92.     As a result of Defendant's fraudulent and deceptive acts and practices, Plaintiffs and members of the Class have been damaged and Plaintiffs bring this claim on behalf of the general public for damages, injunctive relief and restitution, including disgorgement of Defendant's profits obtained by virtue of its misconduct.

## COUNT II

## BREACH OF CONTRACT

93.     The Plaintiffs, individually and on behalf of all others similarly situated, refer to and incorporate herein by reference each of the preceding paragraphs as fully set forth herein.

94.     The Plaintiffs, and the Defendant entered into a contract according to which the Plaintiffs agreed to purchase and did purchase, bottled water which was expressly and impliedly represented to be "natural spring water," obtained from spring water sources.

95.    However, the bottled water sold to Plaintiffs was not in fact "natural spring water" and was not obtained from spring water sources, contrary to Defendant's express and implied warranties and in violation of M.G.L. c. 106, §2-313 (express warranties) and §2-314(implied warranty of merchantability).

96.    As a result of Defendant's breach of contract Plaintiffs and members of the Class have been damaged, and Plaintiffs bring this claim on behalf of the general public for injunctive relief and restitution, including disgorgement of defendant's profits obtained by virtue of their misconduct.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF GOOD FAITH AND FAIR DEALING

97.    The Plaintiffs, individually and on behalf of all others similarly situated, refer to and incorporate herein by reference each of the preceding paragraphs as fully set forth herein.

98.    Pursuant to M.G.L. c.106, §1-203 and Massachusetts common law, all contracts and duties concerning the sale of goods impose an obligation of good faith in their performance or enforcement.  Good faith is defined as meaning honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

99.    Defendant violated its obligation of good faith in the performance of its duties when it engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices, including advertising its bottled water as natural "spring water," and alleging that the water was obtained from spring water sources.

100.    As a result of Defendant's breach, Plaintiffs and members of the Class have been damaged, and Plaintiffs bring this claim on behalf of the class for damages and for injunctive relief and restitution, including disgorgement of defendant's profits obtained by virtue of their misconduct.

- 22 -

## COUNT IV

## UNJUST ENRICHMENT

94.     The Plaintiffs, individually and on behalf of all others similarly situated, refer to and incorporate herein by reference each of the preceding paragraphs as fully set forth herein.

95.     Defendant has benefited from its unlawful acts through the overpayments for "Poland Spring Natural Spring Water" products by the Plaintiffs and other Class members and the increased profits resulting from such overpayments. It would be inequitable for Defendant to be permitted to retain the benefit of these overpayments, which were conferred by the Plaintiffs and retained by Defendant.

96.     The Plaintiffs and members of the Class are entitled to the establishment of a constructive trust consisting of the benefit to Defendant of such overpayments, from which the Plaintiffs and the other Class members may make claims on a pro-rata basis for restitution.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant for the following relief:

1.     A declaration that Defendant has committed the violations alleged herein;

2.     A judgment for the damages sustained by the Poland Spring Consumers and the Class defined herein, and for any additional damages, penalties and other monetary relief provided by applicable law, including treble damages;

3.     Restitution to the general public, including disgorgement of Defendant's profits obtained by virtue of their false advertising and disgorgement of Defendant's profits obtained by virtue of other misconduct in violation of Massachusetts common law.

4.     A permanent injunction enjoining Defendant Nestle Water North America, Inc., their officers, directors, employees, agents, assigns and successors, from collecting, bottling, distributing, or selling any water product or bottled water product labeled, promoted or advertised to be "spring water" which fails to adequately meet the definition of "spring water" under the Code of Massachusetts Department of Public Health, 105 CMR 570.003;

- 23 -

5.      A permanent injunction enjoining Defendant Nestle Water North America, Inc., its officers, directors, employees, agents, assigns and successors from labeling, promoting, advertising, stating, or in any way expressly or impliedly communicating to the public, any representation or statement that misleads or has the tendency or capacity to mislead the public concerning:

       a.      The geologic source of its water or bottled water products;

       b.      The geographic origin of its water or bottled water products;

       c.      The purity or any other positive attribute of their water or bottled water products;

6.      The costs of this suit, including, but not limited to, a reasonable attorneys' fee; and

7.      Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated:   _6/ 18/03_

Respectfully submitted,

**HAGENS BERMAN LLP**
By:

_Thomas M. Sobol_
Thomas M. Sobol, BBO No. 471770
Edward Notargiacomo, BBO No. 567636
Jeniene Andrews-Matthews
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

**IVEY & RAGSDALE**
By:

_Garve Ivey_
Garve Ivey, Esq.
315 W. 19th Street
Post Office Box 1349
Jasper, Alabama 35502
Telephone: (205) 221-4644
Facsimile: (205) 252-8484

- 25 -

STERN SHAPIRO WEISSBERG &
GARIN, LLP
By:

Max D. Stern, BBO No. 479560
90 Canal Street
5th Floor
Boston, MA 02114
Telephone: (617) 742-5800
Facsimile:  (617) 742-5858

G:\SSWG\Poland Spring\Class Action Complaint.DOC

## Commonwealth of Massachusetts
### County of Middlesex
### The Superior Court

CIVIL DOCKET # **MICV2003-02577**

RE:   **McGonagle et al v Nestle Waters North America, Inc.**

TO: Thomas M Sobol, Esquire
225 Franklin Street
26th Floor
Boston, MA 02110

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 09/16/2003 |
| Response to the complaint filed (also see MRCP 12) | 11/15/2003 |
| All motions under MRCP 12, 19, and 20 filed | 11/15/2003 |
| All motions under MRCP 15 filed | 11/15/2003 |
| All discovery requests and depositions completed | 04/13/2004 |
| All motions under MRCP 56 filed and heard | 05/13/2004 |
| Final pre-trial conference held and/or firm trial date set | 06/12/2004 |
| Case disposed | 08/11/2004 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session B sitting in **Rm 11B (Cambridge)  Middlesex Superior Court.**

Dated: 06/18/2003

Edward J. Sullivan,
Clerk of Courts

BY:

Location: Rm 11B (Cambridge)
Telephone: 617-494-4010 EXT 4294

William Smith
Assistant Clerk

Check website as to status of case: http://**ma-trialcourts.org/tcic**
2389503 inidoc01 dipacee

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET # **MICV2003-02577**

RE:   **McGonagle et al v Nestle Waters North America, Inc.**

TO: Edward Notargiacomo, Esquire
    225 Franklin Street
    26th Floor
    Boston, MA 02110

### TRACKING ORDER - F TRACK

    You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 09/16/2003 |
| Response to the complaint filed (also see MRCP 12) | 11/15/2003 |
| All motions under MRCP 12, 19, and 20 filed | 11/15/2003 |
| All motions under MRCP 15 filed | 11/15/2003 |
| All discovery requests and depositions completed | 04/13/2004 |
| All motions under MRCP 56 filed and heard | 05/13/2004 |
| Final pre-trial conference held and/or firm trial date set | 06/12/2004 |
| Case disposed | 08/11/2004 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session B sitting in **Rm 11B (Cambridge)  Middlesex Superior Court.**

Dated: 06/18/2003

                                           Edward J. Sullivan,
                                            Clerk of Courts

                        BY:

                                           William Smith
Location: Rm 11B (Cambridge)                           Assistant Clerk
Telephone: 617-494-4010 EXT 4294

Check website as to status of case: http://**ma-trialcourts.org/tcic**
2389503 inidoc01 dipacee



**STERN
SHAPIRO
WEISSBERG
& GARIN** LLP

a t t o r n e y s   a t   l a w

**03-2577**

Max D. Stern
Jonathan Shapiro
Lynn G. Weissberg
Patricia Garin
Martin E. Levin
Kenneth M. Resnik
M. Amy Carlin

June 18, 2003

**BY HAND**

Edward J. Sullivan, Clerk
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

          Re:  Lisa McGonagle, et al. v. Nestlé Waters
               North America, Inc.

Dear Sir/Madam:

     Enclosed please find:

     1.   Class Action Complaint and Jury Trial Demand;

     2.   Civil Action Cover Sheet, and;

     3.   Our check for the filing fee in the amount of
          $210.

     Thank you for your attention to this matter.

                         Yours truly,

                         Max D. Stern
                         Max D. Stern

MDS/jah
encl.
cc:  Jeffrey M. Garrod, Esq.
     Garve Ivey, Esq.
     Thomas M. Sobol, Esq.

G:\SSWG\Poland Spring\Clerk.11.wpd

90 Canal Street   Boston, MA 02114-2022
617-742-5800  Fax: 617-742-5858  E-Mail: sswg@sswg.com

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

.......... MIDDLESEX .......... , ss

[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 03 -2577

LISA McGONAGLE &
DEBORAH KUHN .........., Plaintiff(s)

v.

NESTLE WATERS NORTH
AMERICA, INC. .........., Defendant(s)

## SUMMONS

2003 AUG 10 A

To the above-named Defendant:

MAX STERN

You are hereby summoned and required to serve upon .................................................

.................................... plaintiff's attorney, whose address is ......... 90 CANAL STREET ........

..... BOSTON, MA. 02114 .........................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ... 40. THORNDIKE STREET

CAMBRIDGE, MA. 02141

.................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at .... MIDDLESEX ......................................

the ......... 18 ......................................... day of ......... JUNE ..............................

...................., in the year of our Lord ......... 2003 ......................... .

Edward J. Sullivan

**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

**STERN**
**SHAPIRO**
**WEISSBERG**
**& GARIN** LLP

a t t o r n e y s   a t   l a w

Max D. Stern
Jonathan Shapiro
Lynn G. Weissberg
Patricia Garin
Martin E. Levin
Kenneth M. Resnik

July 9, 2003

Edward J. Sullivan, Clerk
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

      Re:  Lisa McGonagle, et al. v. Nestlé Waters
          North America, Inc.
          <u>C.A. No. 03-2577</u>

Dear Mr. Sullivan:

    Enclosed please find the Summons with Acceptance of
Service in the above-captioned case.

    Thank you for your attention to this matter.

                      Yours truly,

                      Max D. Stern

MDS/jah
encl.
cc:  Garve Ivey, Esq.
     Thomas M. Sobol, Esq.

G:\SSWG\Poland Spring\Clerk.12.wpd

90 Canal Street   Boston, MA 02114-2022
617-742-5800   Fax: 617-742-5858   E-Mail: sswg@sswg.com

## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

Benjamin L. Hincks

617 542 6000
617 542 2241 *fax*

*Direct dial 617348-4424*
**bhincks@mintz.com**

July 18, 2003

**BY HAND**

Civil Clerk's Office
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

Re:   Lisa McGonagle and Deborah Kuhn, on behalf of themselves and all others
       similarly situated v. Nestlé Waters of North America, Inc.
       Middlesex Superior Court, Civil Action No. 03-2577

Dear Sir or Madam:

Enclosed please find defendant Nestlé Waters North America, Inc.'s Notice of Filing of
Notice of Removal and a Certified copy of the Notice of Removal filed with the United States
District Court for the District of Massachusetts.

Additionally, please forward to my attention certified copies of the docket sheet and all
process pleadings and orders filed with the Middlesex Superior Court in this matter for
forwarding to the Federal District Court.

Thank you for your assistance in this matter.

Very truly yours,

Benjamin L. Hincks

BLH:hmg

Enclosures
cc:   Max D. Stern, Esq.

*Boston  New York  Reston  Washington  New Haven*

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO. 03-2577

LISA McGONAGLE and DEBORAH KUHN,
on behalf of themselves and all others similarly
situated,

          Plaintiffs,

      v.

NESTLÉ WATERS NORTH AMERICA, INC.,
          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

RECEIVED 2003 JUL 18 P 3:42

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant Nestlé Waters North America, Inc. ("Nestlé") gives notice that it has filed in the

United States District Court for the District of Massachusetts a Notice of Removal of the above-

captioned action, a certified copy of which is attached as Exhibit A.

          Respectfully submitted,

          NESTLÉ WATERS NORTH AMERICA,
          INC.,

          By its attorneys,

          Martha J. Koster, BBO# 277900
          Kevin M. McGinty, BBO# 556780
          Benjamin L. Hincks, BBO# 630685
          Mintz, Levin, Cohn, Ferris, Glovsky
          and Popeo, P.C.
          One Financial Center
          Boston, MA 02111
          (617) 542-6000

OF COUNSEL:

Jeffrey M. Garrod, Esq.
Orloff, Lowenbach, Stifleman & Siegel, P.C.
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 622-6200


Dated:  July ____, 2003

## CERTIFICATE OF SERVICE

I, Helen M. Gerostathos, counsel for the above-named Defendant, Nestlé Waters North America, Inc., hereby certify that a copy of the foregoing, **NOTICE OF FILING OF NOTICE OF REMOVAL,** was served this day, via first class mail, postage prepaid, on:

Max D. Stern, Esq.
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street
Boston, MA 02114-2022

Dated: July 18, 2003

Helen M. Gerostathos

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2003 JUL 18  P 3: 03

U.S. DISTRICT COURT
DISTRICT OF MASS.

LISA McGONAGLE and DEBORAH KUHN,
on behalf of themselves and all others similarly
situated,

　　　　　　　Plaintiffs,

　　v.

NESTLÉ WATERS NORTH AMERICA, INC.,
　　　　　　　Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 03 10370 DPW

## NOTICE OF REMOVAL

Defendant Nestlé Waters North America, Inc. ("Nestlé"), pursuant to 28 U.S.C. §§
1441(a) and 1446, removes to this Court the civil action entitled *Lisa McGonagle and Deborah
Kuhn, on behalf of themselves and all others similarly situated, v. Nestle Waters of North
America, Inc.*, Civil Action No. 03-2577, Middlesex Superior Court for the Commonwealth of
Massachusetts (the "State Court Action").  Removal is appropriate for the following reasons:

## JURISDICTION AND VENUE

1.　　The Court has jurisdiction over this civil action under 28 U.S.C. § 1332(a).
Plaintiffs Lisa McGonagle and Deborah Kuhn ("Plaintiffs") are alleged in the complaint in the
State Court Action (the "Complaint") to be residents of Middlesex County, Massachusetts.
Nestlé is a Delaware corporation with a principal place of business located in Greenwich,
Connecticut.  Plaintiffs and Nestlé are, therefore, citizens of different states, and diversity exists.
On information and belief, from the Complaint, Plaintiffs seek damages and relief in excess
of $75,000, exclusive of interest and costs.  Moreover,

under 28 U.S.C. § 1331, as the Complaint asserts claims arising under the Constitution, laws, or treaties of the United States.

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2).  As alleged in Paragraphs 14-27, *inter alia*, of the Complaint, a substantial part of the alleged events or omissions giving rise to the asserted claims occurred in this District.  Moreover, venue in this District is proper because Nestlé is subject to personal jurisdiction in this District, and thus, pursuant to 28 U.S.C. § 1391(c), is deemed for the purposes of venue to reside in this District.

## THE STATE COURT ACTION

3.      The State Court Action being removed to this Court originated by way of the Complaint, which was filed by Plaintiffs on or about June 18, 2003.  A Summons issued by the Middlesex County Superior Court on June 18, 2003 and the Complaint, were served by mail on counsel for Nestlé, which service was accepted as of July 1, 2003.

4.      Nestlé will forward a copy of this Notice to Plaintiffs' counsel and file the Notice with the Civil Clerk of the Middlesex County Superior Court, pursuant to 28 U.S.C. § 1446(d).

5.      Further, pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on Nestlé as of the date of this filing are attached as Exhibit A.

## GROUNDS AND TIMELINESS OF REMOVAL

6.      This action is removable to this United States District Court under 28 U.S.C. §§ 1441(a), 1331 and 1332(a).

7.    This Notice is being filed within the thirty (30) days of Nestlé's receipt of the

Summons and Complaint, as required by 28 U.S.C. 1446(b).

Respectfully submitted,

NESTLÉ WATERS NORTH AMERICA,
INC.,

By its attorneys,

Martha J. Koster, BBO# 277900
Kevin M. McGinty, BBO# 556780
Benjamin L. Hincks, BBO# 630685
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

OF COUNSEL:

Jeffrey M. Garrod, Esq.
Orloff, Lowenbach, Stifleman & Siegel, P.C.
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 622-6200

Dated:  July _18_, 2003

LIT 1408181v1